UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE LYNN WATERLOO,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>M. S. EVANS, Warden,<br><br>　　　　Respondent. | NO. CV 08-1280 JVS (FMO)<br><br>**ORDER ADOPTING FINDINGS,<br>CONCLUSIONS AND RECOMMENDATIONS<br>OF UNITED STATES MAGISTRATE JUDGE** |

## INTRODUCTION

On February 26, 2008, Dale Lynn Waterloo ("petitioner"), a California state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") pursuant to 28 U.S.C. § 2254. On June 12, 2008, respondent filed his Return to the Petition ("Return"), together with a Memorandum of Points and Authorities in Support of the Return ("Return Memo."). On July 28, 2008, petitioner filed a Reply to the Return ("Reply"), together with a Memorandum of Points and Authorities in Support of the Reply ("Reply Memo.").

On August 14, 2008, the Magistrate Judge issued his Report and Recommendation ("R&R"), recommending that the Petition be denied and the action dismissed with prejudice. (See R&R at 1 & 31). On September 10, 2008, petitioner filed Objections to the R&R ("Objections").

## DISCUSSION

In his Objections, petitioner raises two claims worthy of brief discussion. First, petitioner argues that his conviction for making criminal threats exceeds "the boundaries imposed by the

First Amendment[.]"  (Reply Memo. at 25); (see Objections at 4)[1] (incorporating by reference pages 25 through 28 of the Reply Memo.).  Second, petitioner argues that "on p. 16 line 1 [of the R&R], [the Magistrate] references the testimony of Scott who didn't claim fear for himself but, for Mastrolonardo who is not an immediate family member (element (4)), nor an 'intimate.'" (Objections at 3) (emphasis in original).

In support of his First Amendment claim, petitioner cites Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399 (1969) (per curiam), and United States v. Kelner, 534 F.2d 1020 (2d Cir.), cert. denied, 429 U.S. 1022, 97 S.Ct. 639 (1976). (See Objections at 4). In Watts, the Supreme Court reversed a conviction under 18 U.S.C. § 871(a), which criminalizes knowing and willful threats against the President, the Vice President, or any other officer next in the order of succession. See 394 U.S. at 705-06, 89 Sct at 1400-01.  The Supreme Court explained that the defendant had attended a public rally on the Washington Monument grounds and had entered a discussion group about police brutality.  See id. at 706, 89 S.Ct. at 1400.  After "one member of the group suggested that the young people present should get more education before expressing their views[,]" the defendant stated as follows:

> They always holler at us to get an education.  And now I have already received my draft classification as 1-A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L. B. J.  They are not going to make me kill my black brothers.

Id. at 706, 89 S.Ct. at 1400-01 (internal quotation marks omitted).  The Supreme Court held that the defendant's conviction  should be reversed because the "statement was made during a political debate, . . . was expressly made conditional upon an event – induction into the Armed forces – which petitioner vowed would never occur, and . . . both petitioner and the crowd laughed after the statement was made." Id. at 707, 89 S.Ct. at 1401.

---

[1] The Court sequentially numbers the pages in the Objections, i.e., 1-8.

Petitioner seems to argue that his statements were similar to the crude political rhetoric in Watts because his statements were conditional and hyperbolic. (See Objections at 4); (Reply Memo. at 25) ("The petitioner's position is that hyperbole is the same whether it is 'political' or not.") (internal citation omitted). However, as explained in the R&R, the relevant question is not whether petitioner subjectively intended to carry out his threats, but whether the surrounding circumstances demonstrate that petitioner intended his statements to be taken as threats. (See R&R at 15). Here, lunging toward Kraig Scott ("Scott") and holding him at knife point, as well as chasing Jennifer Mastrolonardo ("Mastrolonardo") out of her home with a knife, strongly demonstrate that petitioner intended his statements to be taken as threats. (See RT at 161, 312-14); see also People v. Teal, 61 Cal.App.4th 277, 281 (1998) (finding overwhelming evidence of specific intent where appellant tried to batter down victim's front door and window while repeatedly shouting "I'm going to kill you, you son of a bitch").

Moreover, the Supreme Court upheld the constitutionality of the criminal threats statute in Watts. See 394 U.S. at 707, 89 sct at 1401 ("Certainly the statute under which petitioner was convicted is constitutional on its face."). Similarly, in Kelner, the Second Circuit relied on Watts to conclude that "threats punishable consistently with the First Amendment were only those which according to their language and context conveyed a gravity of purpose and likelihood of execution so as to constitute speech beyond the pale of protected vehement, caustic[,] unpleasantly sharp attacks on government and public officials." 534 F.2d at 1026 (internal quotation marks and citation omitted). Here, as explained in the R&R, petitioner's threats "were made under circumstances conveying an immediate prospect of execution." (R&R at 15). Accordingly, petitioner's objection based on the First Amendment is rejected.

Next, petitioner accurately points out that his conviction for making criminal threats against Scott requires evidence that Scott personally feared for his safety. (See Objections at 2-3). Petitioner points to page 16, line 1 of the R&R and claims that the Court only relied on evidence that Scott feared for Mastrolonardo's safety, but not his own. (See id. at 3); (R&R at 15-16) ("At trial, Scott testified that he was 'pretty scared' and 'very worried' about Mastrolonardo."). While the phrasing of this sentence could be misread to mean that Scott was scared for and worried

about Mastrolonardo, this interpretation does not accurately reflect the testimony. Rather, Scott testified as follows:

> Q. You didn't say on the tape "I suspected he's breaking up the house"?
> A. No sir. I was pretty scared.
> Q. Okay. But you said he was breaking up the house and he's threatening Miss Mastrolonardo?
> A. Yes, he did threaten her.
> Q. And you said that you were very worried about Miss Mastrolonardo; is that right?
> A. That's correct.

(Reporter's Transcript at 214). Thus, the record is clear that when Scott said, "I was pretty scared[,]" he was talking about his fear for his own safety, not Mastrolonardo's safety. (Id.). Only later did Scott testify that he was "very worried about Miss Mastrolonardo[.]" (Id.). Accordingly, petitioner's objection based on evidence of Scott's personal fear is overruled.

## **CONCLUSION**

Based on the foregoing and pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all of the records herein, the Report and Recommendation of the United States Magistrate Judge, and the Objections to the Report and Recommendation. The Court has made a de novo determination of the portions of the Report and Recommendation to which Objections were directed. The Court concurs with and adopts the findings and conclusions of the Magistrate Judge. Accordingly, IT IS ORDERED THAT:

1. Judgment shall be entered dismissing the action with prejudice.
2. The Clerk shall serve copies of this Order and the Judgment herein on the parties.

DATED: September 19, 2008

_____
JAMES V. SELNA
UNITED STATES DISTRICT JUDGE